**AERO DESIGN & ENGINEERING CO., a corporation, Plaintiff in Error.**

**v.**

**BOARD OF REVIEW et al., Defendant in Error.**

**No. 38253.**

Supreme Court of Oklahoma.

Aug. 2, 1960.

Rehearing Denied Nov. 1, 1960.

Lytle, Johnston & Soule, Oklahoma City, Okl., for plaintiff in error.

Milton R. Elliott, Burton Duncan, Oklahoma City, Okl., for Oklahoma Employment Commission.

PER CURIAM.

This is an appeal by Aero Design & Engineering Company, a corporation, (Aero) from a judgment of the District Court of Oklahoma County, sustaining asserted rights of employees of Aero to benefits under the Oklahoma Employment Security Act (40 O.S.1951 § 211 et seq., as amended).

On November 29, 1955, a large number of the employees of Aero ceased work and left the plant of Aero in protest over failure or inability of their designated collective bargaining agent, United Auto Workers Union, and Aero to negotiate a labor contract. At the time Aero made it known that those employees desiring to continue work could do so. A sufficient number of employees continued working to enable Aero to continue operations.

A considerable number of those employees who ceased work and went out on strike made claim for benefits under the Act. The Board of Review, provided for in the Act, found that as a result of the above employees' acts there was a substantial curtailment of work at the plant, which did not cease until February 12, 1956.

Aero contends that our opinion in Board of Review et al. v. Mid-Continent Petroleum Corp., 193 Okl. 36, 141 P.2d 69, controls this appeal, and defendants in error contend that it is not in point. This requires examination of the provisions and history of development of the present Act.

The original Oklahoma Unemployment Compensation Law, as passed by the 1936 Special Session of the Oklahoma Legislature, Chapter 52, page 30, in Section 2 thereof, under the heading "Declaration of State Public Policy", made certain declarations of Public Policy "As a guide to the interpretation and application of this Act. * * *". Therein it was declared in part that "Involuntary unemployment" was a subject of general interest and concern requiring appropriate action by the legislature. The concluding sentence of said Section 2, is as follows:

> " * * *. The Legislature, therefore declares that in its considered judgment the public good and the general welfare of citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment compensation funds to be used *for the benefit of persons unemployed through no fault of their own.* (Emphasis ours.)"

At the 1941 session of the Oklahoma Legislature, Section 2, was amended in several respects (Laws 1941, p. 136, Sec. 2; Title 40 O.S.1941 § 212), and among others, to eliminate the word "involuntary" from the above quote, and to eliminate from the quoted concluding sentence thereof the words " * * * through no fault of their own". Extensive comment could be made but is not required or pertinent here as to the effect of the amendment when considered with other 1941 amendments of the Act. Suffice it to say that words of limitation were removed from said Section 2.

The facts and circumstances passed upon in our opinion in the Mid-Continent case, supra, arose while the original 1936 Act was in force. The decision in that case, however, was rendered in 1943 and subsequent to the 1941 amendments. In that decision there was discussion in the majority, concurring and dissenting opinions, as to the later amendments throwing some light upon the problem of determining the intent of the legislature, when it passed the original 1936 Act, and thereby enabling this court to arrive at a correct decision in the Mid-Continent case. By majority opinion in that case we affirmed the judgment of the lower court denying benefits under the 1936 Act.

The decision and expressions made in the Mid-Continent case were available to and were undoubtedly known by the legislature for a number of years and during several of its sessions. In 1953 the legislature again amended what was Section 2 of the original 1936 Act by reinstating at the end of the last sentence, concerning benefits to unemployed persons, the limiting words " * * * through no fault of their own". Laws 1953, p. 141, Sec. 1; Title 40 O.S. 1953 Supp., Section 212. In view of the history and the litigation involving this law and the knowledge thereof by the legislature it is our opinion that the last amendment is entitled to great weight as expressing the clear intention of the legislature. This section was passed as a "guide to the interpretation and application" of the Act and the benefits of the Act should be limited

# 346

to persons falling within the prescribed category.

There is no question but that there was a labor dispute between Aero and a large number of its employees and that Aero and the employees, acting through their bargaining agent, were unable to negotiate a labor contract satisfactory to both sides. Those employees who stopped working and left the plant and went on strike did so voluntarily as an act of protest over failure of Aero to agree to a labor contract. Those who remained on strike refused to return to work unless a labor contract was agreed upon. This is evidenced by testimony of a member of the Union's negotiating committee before the Appeal Tribunal on February 22, 1956, when he testified they were not ready to go back to work unless a labor contract was signed. The conclusion is that the persons who did not return to work continued on strike in protest over failure to negotiate a signed contract. No contract was ever agreed on or signed.

Under the provisions of the above quoted law those employees on strike and not working would be entitled to benefits under the Act, as amended, only if unemployed through no fault of their own. A determination of the status of these parties is found in our decision in the Mid-Continent case, supra. Therein we said that one who is out on strike can hardly be said to be unemployed through no fault of his own and that whether his cause is just or unjust is beside the point. In that decision we adopted the following conclusion [193 Okl. 36, 141 P.2d 72]:

"* * * It must be concluded that the purpose of the act was to provide benefits to those who were involuntarily out of employment, and not to finance those who were willingly and deliberately refusing to work because of a failure of their employers to accede to demands for higher wages."

Under the view that we take, as herein set forth, we deem it unnecessary to make any determination of the other contentions of the parties, including the applicability or construction of Title 40 O.S.1953, Supp.,

Section 215(d), as to disqualification to receive benefits due to stoppage of work because of a labor dispute.

It is our opinion that our holding in the Mid-Continent case, supra, controls the present situation, when we said:

"An individual who ceases work by reason of a labor dispute or strike against his employer is ineligible for benefits under the Oklahoma Unemployment Compensation Law of 1936, so long as he participates in such dispute and remains out of employment by reason thereof."

Reversed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, J., dissents.